that the provision in question, by natural and ordinary rules of construction, must be held to be effective in New York City.

The remaining question to be here considered arises under section 1618 of the act creating the Greater City of New York. That section provides that neither that act, nor any section or portion of it, shall be deemed to be repealed or amended by any act of the legislature, unless it is so expressly stated or the intent to do so is unmistakable. Acts intended to state or define the intent of subsequent legislatures are certainly not favored, and they have sometimes been altogether rejected by the courts. It certainly seems quite novel to embody in a local law a rule of statutory construction applicable only to it, and only intended to save or shield such local law from the effect of laws passed by a subsequent legislature. Our constitution favors general legislation as to cities, and divides them into classes, both to enforce and to facilitate such legislation,—legislation as to cities by classes. But, if legislation of the character of section 1618 is to have the effect here claimed, would it not result that a law relating to cities of the first class would affect Buffalo alone? The precise scope and effect of a clause of this kind it is certainly not quite easy to state; and difficulties and considerations are abundant against a radical view in either direction. But, apart from that consideration, it seems to me that the legislative intent is unmistakable that the amendment in question should have effect in all cities, and certainly should not fail in the one city that contained nearly half of the population of the state. I can fail to find such an intent only by ignoring both the letter and the history of the law.

In reaching the conclusion here indicated, I can but state that I do not find weight or force in the argument which was presented to me, predicated on what is stated as the situation or political exigency which caused the passage of this act of 1898. I do not think that what has been done for civil service in this state or nation has been done for such transitory or elusive political advantage, and I feel certain that arguments predicated on finding such an intent in the legislative department have not found lodgment or favor with the courts.

My conclusion is that the relator is entitled to the writ of mandamus according to the prayer of his petition. Mandamus granted.

---

(24 Misc. Rep. 91.)

ASTRAND v. BROOKLYN HEIGHTS R. CO. (two cases).

(Supreme Court, Special Term, Kings County. March, 1898.)

ATTORNEY'S LIEN.
  Code Civ. Proc. § 66, giving an attorney a lien on his client's cause of action which cannot be affected by any settlement between the parties before or after judgment, includes an unassignable cause of action for a tort.

Actions by Gerda Astrand against the Brooklyn Heights Railroad Company and by Axel Astrand against the same defendant. Heard on motion of plaintiffs' attorney for leave to prosecute both actions against defendant after settlement thereof between the parties direct. Motion granted.

Chas. J. Patterson, for plaintiffs.

Frederick Collin, for defendant.

DICKEY, J.   These are motions made by plaintiffs' attorney for leave to continue and prosecute the two above-entitled actions against the defendant, and to establish his lien upon the causes of action, he claiming that the defendant has settled the actions with his clients direct, in disregard of his lien for one-third of whatever might be recovered in the action, he having a bargain with the plaintiffs to be compensated by the one-third of the amount of any recovery or settlement.   The defendant is ready and willing to pay the plaintiffs' attorney his taxed costs, not to exceed $150, but insists that the plaintiffs' attorney has no lien before judgment because the cause of action is not an assignable one.

In 1879 the legislature added these words to section 66 of the Code of Procedure:

"From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and the proceeds thereof in whosoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment."

This language seems plain enough, and, as the court said of it, in Peri v. Railroad Co., 152 N. Y. 527, 46 N. E. 850:

"This language is very comprehensive, and creates a lien in favor of the attorney on his client's cause of action, in whatever form it may assume in the course of the litigation, and enables him to follow the proceeds into the hands of third parties, without regard to any settlement before or after judgment.   This is a statutory lien, of which all the world must take notice, and any one settling with a plaintiff, without the knowledge of his attorney, does so at his own risk. * * * The settlement of a litigation ought, in fairness, to be made with full knowledge of plaintiff's attorney and under the conditions protecting his lawful lien.   If he seeks to take an unfair advantage of a desire to settle, he is, as an officer of the court, under its constant scrutiny and control, and will be confined in his lien to his taxable costs and such additional amount as he may be able to duly establish by agreement, express or implied."

Again, the court in Keeler v. Keeler, 51 Hun, 505, 4 N. Y. Supp. 580, in general term, Third department, said:

"Section 66 of the Code of Civil Procedure is explicit in regard to the lien of an attorney upon his client's cause of action for his services.   The amount of it 'is governed by agreement, express or implied, which is not restrained by law.'   It attaches upon the service of first pleading, 'and cannot be affected by any settlement between the parties before or after judgment.'   No notice of the lien need be given to the adverse party.   The statute makes the lien complete."

The case of Coughlin v. Railroad Co., 71 N. Y. 443, has no application now, as that decision, holding that there could be no lien on nonassignable causes of action, was before the amendment of 1879, which, by its terms, included all causes of action, contract and tort alike.   I have been pointed to one special term and one general term decision of the city court of the city of New York, and one general term decision of the First department, which, it is contended, support the claim of defendant here.   The courts making these

decisions seem to have lost sight of the case of Coster v. Ferry Co., 5 Civ. Proc. R. 146, which was affirmed without an opinion in 98 N. Y. 660, and is cited with approval in Peri v. Railroad Co., cited above.

In view of these court of appeals decisions, I must hold, as the statute plainly reads, that the attorney has a lien on the cause of action before as well as after judgment, and grant the motions. Motions granted.