JOSEPH F. POTTER, RESPONDENT, *v.* THE AJAX MINING COMPANY, APPELLANT.

ACTION FOR DAMAGES — ATTORNEY'S FEE CONTINGENT — SETTLE-MENT BY PLAINTIFF — FRAUD ON THE ATTORNEY — SETTING ASIDE JUDGMENT — PROPER PROCEDURE — COMMON LAW RULE THAT COURT WILL PROTECT ITS OFFICERS. ATTORNEY'S LIEN LAW — SEC. 135, R. S. 1898, NOT RETROACTIVE. ENACTMENT OF SEC. 135, R. S. 1898, DID NOT GIVE ATTORNEYS A LIEN ON CAUSES OF ACTION ALREADY BEGUN.

1. *Action for Damages — Attorney's Fee Contingent — Settlement by Plaintiff — Fraud on the Attorney — Setting Aside Judgment — Proper Procedure — Common Law Rule That Court Will Protect Its Officers.*

Where in an action for damages for personal injuries, the compensation of plaintiff's counsel being contingent upon recovery, plaintiff compromises and settles his claim with the agent of the insurer of defendant company, collusively, fraudulently, and for the purpose of cheating and defrauding his attorneys out of their just compensation for services, it is proper for the court to set aside and vacate the satisfaction and dismissal of the action, under the common law rule that the court may protect one of its officers from the fraud of his client, and the attorneys were entitled to continue the prosecution of the case to determine the amount of their compensation.

2. *Attorney's Lien Law.   Sec. 135, R. S. 1898, Not Retroactive.*

Sec. 135, R. S. 1898, known as the Attorney's Lien Law, is not retroactive, and can not affect a cause of action accruing or a suit brought before it became operative.

3. *Enactment of Sec. 135, R. S. 1898, Did Not Give Attorneys a Lien on Causes of Action Already Begun.*

Where a cause of action accrued and action was commenced before Sec. 135, R. S. 1898, giving attorneys a lien went into effect, it was error to instruct the jury that the statute applied to the case and gave attorneys a lien upon plaintiff's cause of action which attached to the verdict, decision, or judgment, which a settlement by plaintiff out of court and without his attorney's knowledge or consent could not affect.

(Decided May 3, 1899.)

Appeal from the Fifth District Court. Juab County, Hon. E. V. Higgins, *Judge.*

Action by plaintiff against defendant for damages for personal injuries alleged to have occurred through the negligence of defendant.

After plaintiff had entered into a written contract with his attorneys, agreeing to give them fifty per cent of any amount recovered, as compensation for services and witness fees advanced, and that he would make no settlement without the consent of both parties to the agreement, plaintiff made a settlement with the attorney for a guaranty company which had insured defendant company against damages by reason of accidents to its employees, and signed a release and discharge of the defendant company, plaintiff's attorneys entered a motion, based upon affidavit, to set aside an order of dismissal in the cause, and upon a hearing the order was made, and after answer the case was tried, and a verdict returned on it, and judgment was entered as for attorney's fees for plaintiff's attorneys.

From that judgment defendant appeals.   *Reversed.*

*Messrs. Bennett, Harkness, Howat, Bradley & Richards,* and *Messrs. King, Burton & King,* for appellant.

This action was brought in October, 1897. The statute giving attorneys a lien upon plaintiff's cause of action did not go into effect until January, 1898, and we contend, therefore, that it did not affect the plaintiff's cause of action, suit upon which had been brought before that time, and where the plaintiff and his attorneys had made a contract for the attorney's compensation before the suit was brought, and consequently before the law under which they claim became operative. At common law the rule was that a statute is never to be construed to operate retrospectively, unless it is required in the most explicit terms. *Mc Carthy* v. *Perry,* 23 Fla., 508; *Plumb* v. *Sawyer,* 21 Conn., 351, 355; *Fahnestock* v. *Wilson,* 95 Pa. St., 301; *Capelle* v. *Baker,* 3 Hous. (Del.), 344.

It will hardly be contended that in this State a cause of action for personal injuries survives. Causes of action for torts where the injury is to property do survive, but it will not be contended that a cause of action for injuries to the person of the individual survives, and so it can not be assigned or transferred for any purpose so as to give the assignee or transferee any interest in the cause of action itself. That being the case, the plaintiff had the undoubted right to settle his suit with the defendant in this case. *Railway Co.* v. *Ackley, supra.; Coughlin* v. *R. Co.,* 71 N. Y., 443.

Our statute, giving an attorney a lien upon a cause of action, is the same as the statute of New York of 1879, and was adopted by our Legislature as a part of the Revised Statutes. The New York courts have held, under the act of 1879, that plaintiff had a right to settle his case without his attorney's consent, *Lee* v, *V. O. Co.,*

126 N. Y., 579; *Poole* v. *Belcha*, 131 N. Y., 200; *Peri* v. *Ry. Co.*, 152 N. Y., 521, 527; *Printing Co.* v. *Printing Co.*, 38 N. Y., 784.

*Messrs. Powers, Straup & Lippman*, and *Joseph E. Page, Esq.*, for respondent.

Plaintiff's attorneys were not bound by said settlement, because,

First, of their statutory lien; and

Second, in cases of fraudulent and collusive settlement and the insolvency of the plaintiff, of their common law lien, and the right to have the settlement vacated, and the cause prosecuted in the name of the plaintiff for their benefit.

The Revised Statutes of Utah which went into effect January 1, 1898, provide :

" The compensation of an attorney and counselor for his services is governed by agreement express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has o lien upon his clients' cause of action or counterclaim, which attaches to a verdict, report, decision, or judgment in his clients' favor and the proceeds thereof in whosesoever hands they may come; and can not be affected by any settlement between the parties before or after judgment." R. S. 1898, Sec. 135.

Prior to the passage of said statute the common law relative to champertous contracts was modified by Section 3683 of C. L., 1888, and no legal restrictions were placed upon agreements between attorney and client. *Croco* v. *O. S. L. R. R.* (Utah), 54 Pac., 985.

The law of 1898 simply added to the law of 1888 in providing an additional and revised remedy by giving

attorneys a lien upon the cause of action as well as on the judgment and fund recovered, and gave them enlarged protection from fraudulent and collusive settlements. The latter statute did not for the first time give attorneys a right to claim compensation for services, or a right to enforce such claim, or for the first time give them a lien. For under the common law attorneys had both a retaining lien and a charging lien. The latter lien, in giving an attorney the right to recover his fees from a . fund recovered by his aid, and also the right to have the court interfere to prevent payment, settlement, or assignment of judgment in fraud of his claim. *Sewing Machine Co.* v. *Boutelle*, 56 Vt., 570; *Walker* v. *Sargeant*, 14 Vt., 247, with notes; *McKenzie* v. *Wardwell*, 61 Maine, 136; *Andrews* v. *Morse*, 12 Conn., 444; *Weeks et al.* v. *Circuit Judges*, 41 N. W. (Mich.), 269; *Marquat* v. *Mulvy*, 9 How., Pr., 460; *Hister* v. *Den.*, 17 N. J. L., 438; *People* v. *Pack* (Mich.), 74 N. W., 185; *In re* Wilson, 12 Fed. Rep., 235; *Koons* v. *Beach* (Ind.), 45 N. E., 601; 46 N. E., 587.

The law pertaining to retrospective and ·remedial statutes is elementary and indisputable, but the difficulty arises in making the application of the principles. We therefore beg leave to refer the court to the following cases in which statutes have been held applicable to pending cases, or in which they have been given retroactive effect, or in which they have been declared remedial. *Buckingham* v. *Moss*, 40 Conn., 461; *Mason* v. *Heywood*, 5 Minn., 74; *Logan* v. *Logan* 77 Ind., 558; *Dobbins* v. *First National Bank*, 112 Ill., 553; *Winslow* v. *People*, 117 Ill., 152; *County of Kossuth* v. *Wallace*, 60 Ia., 508; *Wood* v. *Westborough*, 140 Mass., 403; *Berry* v. *Clary*, 77 Me., 482; *Manf. Co.* v. *Keyser*, 62 Miss., 155.

It is also contended the said contract between the attor-

neys and plaintiff is champertous and void, and against public policy. In a very recent case this court, on a similar contract, held adversely to such a contention. *Croco* v. *R. R.* (Utah), 54 Pac., 985.

The defense of champertous contract was not pleaded. And in the above case it was held that the question of champerty and maintenance can only be raised by the parties to the contract, and not by any stranger to it, and then must be specially pleaded.

The same ruling was adhered to by this court, in *Kennedy* v. *R. R.*, 54 Pac., 989. In view of the above decisions we do not deem it essential to cite additional authorities or to further discuss this branch of the case.

### STATEMENT OF FACTS.

On October 11, 1897, plaintiff filed his verified complaint against the defendant in Juab County, alleging that he was injured through the negligence of the defendant while in its employ, and prayed judgment in the sum of $15,000. The complaint was signed by J. E. Page, and Powers, Straup & Lippman, attorneys for the plaintiff. On October 30, 1897, the defendant, by its attorneys, filed its verified answer, denying all the material allegations in the complaint. Prior to the commencement of this suit, and on the 23d day of July, 1897, said plaintiff entered into a written contract with the said attorneys, Page, and Powers, Straup & Lippman, agreeing to give said attorneys as full compensation for their services in said cause, one half of any amount that may be recovered, either by way of judgment or settlement of said cause, with the agreement that no settlement should be made without the consent of both parties to the agreement, and that the attorneys should advance the necessary costs and witness fees. Said attorneys afterward advanced the

necessary fees. While the case was so pending and undetermined on issues joined, one Thomas Marioneaux, an attorney located at Salt Lake City, and who was acting for the London Guaranty Company, which company had insured the defendant company against damages by reason of accidents to its employees, and had agreed to indemnify it against such accidents, went to Payson, where plaintiff resided, and where Page, one of plaintiff's attorneys resided, and without consulting with plaintiff's attorneys, induced plaintiff to execute on March 9, 1898, a release and discharge of said defendant to said insurance company of and from all claims and demands, liabilities and causes of action against the said Ajax Mining Company in said cause pending against it for the injury sued for in said action, in consideration of the sum of $1,190, then paid by the said company to the plaintiff, and also executed a receipt in consideration of ten dollars, paid by said company to plaintiff, for all wages, loss of time, and damages on account of the accident sued upon, and afterward procured an order to be entered in said court dismissing and discharging said action at the cost of the plaintiff. Thereupon the attorneys for the plaintiff, learning of said settlement and dismissal, entered a motion based upon affidavit, to set aside such order of dismissal. The affidavit set up fraud on the part of the plaintiff and said company, through its attorney, to procure said settlement and dismissal, to defraud the said attorneys without any notice to them, and that said plaintiff was irresponsible and unable to respond in damages, and that said attorneys were injured and defrauded thereby. Upon a hearing, the court made an order setting aside the dismissal of said action, and allowing said plaintiff's attorneys to prosecute said cause of action, for the purpose of determining the amount and recovering their attorney's

fees and expenses.   On March following the defendant company filed its supplemental answer, whereby it set up as a separate defense such settlement made March 9, 1898.

The cause came on for trial for the purpose of determining the amount of compensation of said attorneys. Said release and dismissal were introduced in evidence for the purpose of showing a defense to any claim plaintiff might have against the defendant, and the jury were instructed that the same were binding on the plaintiff, but that they did not affect the rights of the attorneys to one-half the amount the plaintiff was entitled to recover, as their compensation.   The plaintiff also introduced evidence to show negligence on the part of the defendant, the nature and extent of plaintiff's injuries, claiming that the attorneys were entitled to recover one half the amount the jury should find the plaintiff was entitled to recover. Upon the trial the court instructed the jury that they should determine what sum, if any, the plaintiff was entitled to recover, and return a verdict for fifty per cent of the amount they found he was so entitled to recover, the said one half being the interest and amount of compensation the plaintiff's attorneys had in the plaintiff's cause of action.   The jury rendered a verdict for $2,000, and judgment was entered for that sum.   From this judgment the defendant appeals, assigning many errors.

After stating the facts, *Miner, J.* delivered the opinion of the court.

Plaintiff's attorneys base their right to have the order for the dismissal of the action set aside and the case tried upon the issues joined between the parties, under Sec. 135, Rev. Stat. 1898.   This section provides that:

" The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law.   From the commencement

of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision, or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and can not be affected by any settlement between the parties before or after judgment."

The appellant claims that this contention is erroneous, and that the statute did not affect the plaintiff's case, or create the lien of plaintiff's attorneys, because the act was not retroactive under a proper consideration of the statute, and of Section 2490 Rev. Stat., which provides that no part of the Revised Statutes is retroactive unless expressly so declared.

The contract in question was made on July 23, 1897. This action was commenced October 11, 1897. The statute giving an attorney's lien was passed and became operative January 1, 1898. The action was dismissed by the plaintiff, through the settlement he made with the defendant March 9, 1898. The judgment appealed from was rendered March 28, 1898.

In the case of *Sandberg* v. *The Victor Gold and Silver Mining Company* (decided at the September term of this court, 1898), we held that prior to the enactment of Section 136, Rev. Stat. 1898, there was no attorney's lien for fees on a cause of action before judgment, but that the court would not aid a party in cheating and defrauding his attorney out of his costs and fees; and in *Victor Gold and Silver Mining Co* v. *National Bank of the Republic* (decided at the same term), we held that attorneys have a lien upon the judgment for costs advanced by them, and that the judgment being for costs imported notice of the lien.

Sec. 135, Rev. Stat. 1898, is a copy of Sec. 66, Code

of Civil Procedure of the State of New York for 1879. In *Astrand* v. *Brooklyn Heights Ry. Co.*, 53 N. Y. Supp., 294, it is held that the case of *Coughlin* v. *R. R. Co.*, 71 N. Y., 445, holding that there could be no lien on non-assignable causes of action that did not survive, was before the amendment of 1879, above referred to, and that such statute covers and includes all causes of action, contract and tort alike, and those that do not survive.

We believe this holding to be correct.

The language of Sec. 135, if applicable to this case, is comprehensive, and creates a direct lien in favor of the attorney upon his client's cause of action, whatever form it may assume in the entire course of litigation, and entitles the attorney to follow the proceeds without regard to any settlement, before or after the judgment. It being a statutory lien every one must take notice of it, and any one settling with the client, without the knowledge of the attorney, does so at his own risk.

In common fairness to an attorney, no settlement should be made by the party where an attorney has an interest, without full knowledge of the attorney, and under such conditions as will protect his lien. The attorney being an officer of the court, is under its control, and no unfair demands on his part should be permitted by the court. Under the statute the attorney is entitled to such legal fees and allowances as he can establish by agreement with his client, which is not restrained by law. This agreement, however, does not deprive the party of the right to control the management of his case and determine when the litigation shall cease, providing he is able and willing to satisfy the just claim of his attorney.

So, also, under Sec. 135, the cause of action, although for an injury to the person, which would not survive to the administrator at common law was assignable and the

subject of a contract, such as was made in this case. *Peri* v. *R. R. Co.*, 152 N. Y., 521; *Astrand* v. *Brooklyn Heights R. Co.*, 53 N. Y. Supp., 294; *Lee* v. *Vacuum Oil Co.*, 126 N. Y., 579.

As held in *Santi Peri* v. *N. Y. C. & H. R. R. Co.*, 152 N. Y., 521, this statutory attorney's lien operates as a security and lien upon the cause of action which attaches to the judgment, and if a settlement is made by the parties without the consent or knowledge of the attorney having a lien and in prejudice of his rights, or by reason of the insolvency of his client, or other sufficient cause, the court will interfere and protect the officer by vacating the satisfaction of judgment and by placing the parties in the same situation they were in before, for the purpose of satisfying the lien of the attorney, under the statute, and the action may be prosecuted by the attorney, for his benefit, under his lien.  *O'Brien* v. *Metropolitan Ry. Co.*, 50 N. Y. Supp., 159; *Sternburgh* v. *Miller*, 42 N. Y. Supp., 333; *Palmer* v. *Van Orden*, 64 How. Pr. 79; *Carpenter* v. *Meyers*, 90 Mich., 209.

So, also, at common law, without the intervention of the statute, it has long been the practice of courts to intervene to protect attorneys against settlements made by their clients to cheat them out of their costs.  If an attorney has commenced an action and his client settles it with the opposite party before judgment, collusively, in fraud of his rights, and to deprive him of his costs, the court will permit the attorney to go on with the suit for the purpose of collecting his costs.  *Coughlin* v. *N. Y. C. & H. R. R. Co.*, 71 N. Y., 448; *Randall* v. *Van Wagener*, 115 N. Y., 531; *Weeks* v. *Wayne County Judge*, 73 Mich., 256.

Where by agreement between attorney and client the attorney is to have a lien for his services to a certain

amount upon the judgment to be recovered, this consti-
tutes an equitable assignment of the judgment which
attaches to the judgment as soon as rendered. 1 Jones
on Liens, Secs. 43, 62, 223, 224. .

Again it is held in *Weeks et al.* v. *Wayne Circuit
Judges*, 73 Mich., 256, that in the absence of a statute
"an agreement between attorneys and their client that
they are to be paid for their services rendered in the pros-
ecution of a suit, and reimbursed for moneys advanced,
from the proceeds of the judgment which should be
obtained, operates as an assignment of the judgment to
the attorneys to the extent of such claims, and until the
same are paid the plaintiff can give no valid discharge of
the judgment. The rule that courts look with favor upon
a compromise and settlement made by the parties to a
suit, only applies where all of the rights and interests of
all of the parties concerned, both legal and equitable,
have been respected, and in good faith observed."

To the same effect are, *Carpenter* v. *Myers*, 90 Mich.,
209; *Andrews* v. *Morse*, 31 Am. Dec., 752; Weeks on
Attorneys, 369; *Hutchinson* v. *Howard*, 15 Vt., 544, and
Jones on Liens, Secs. 223, 224.

Upon full examination of the record we find that the
settlement and dismissal of the action as shown by
the proof, was collusive, fraudulent, and prejudicial to
the rights of the attorneys for the plaintiff, and was made
for the purpose of cheating and defrauding them out of
their just compensation for services rendered and agreed
to be rendered in that action, of which fact the Guaranty
Company, through its attorney, had actual notice.

The order setting aside and vacating the satisfaction
and dismissal of the action so collusively and fraudulently
obtained could properly be made by the court under the
common law to protect one of its officers from the fraud

of his client. In permitting the attorneys to continue the prosecution of the case, so as to determine the amount of the lien for their compensation for services in the action, as agreed between them and their client, was a proper mode of reaching the amount of their compensation, without reference to the statute, under the proof of fraud shown in this case. The attorneys were entitled to proceed to judgment under the rules established by courts to protect attorneys from dishonest clients. But the plaintiff in this case did not see fit to adopt the course of procedure so established. The attorneys for the plaintiff based their right to have the dismissal set aside and the cause tried alone upon Section 135, Rev. Stat. This statute did not go into effect until Jan., 1898. It gave the attorneys certain rights, but was not remedial in its nature. It was not retroactive in its operation, and did not affect the plaintiff's cause of action or suit brought upon the contract made, before the statute became operative. At common law the rule was that a statute is never to be construed to operate retrospectively, unless such intention is clearly expressed in the act.

Sec. 2490 Rev. Stat. expressly provides that no part of the Rev. Stat. is retroactive, unless expressly so declared. It is clear that the act applies to cases that might afterward be commenced, and not to contracts or causes of action previously commenced. *Donahy* v. *Clapp*, 12 Cushing, 440.

If the statute had been operative upon the cause of action in question, a lien upon the plaintiff's cause of action might have been created. The cause was tried upon the theory that the statute was retroactive and entitled the plaintiff to recover under its provisions. The court instructed the jury that the statute applied to this case, and that by its provisions the attorneys had a lien

19 Utah—28

upon plaintiff's cause of action, which attached to the verdict, decision, or judgment, and that the settlement made did not affect the attorney's lien upon the cause of action created by virtue of statute.

We are of the opinion that the court erred in submitting the case to the jury upon this theory, and in giving such instruction.

The case is reversed and remanded, with directions to the district court to vacate and set aside the judgment, and to grant a new trial. Defendant is entitled to costs.

BARTCH, C. J.

I concur in the result, but not in all the statements in the opinion respecting liens, as applied to this case.

BASKIN, J., DISSENTING:

I can not concur in the conclusions announced in the opinion of the majority of the court in this case.

A settlement of the case having been made by the parties thereto, and an order having been made in the court below dismissing the case, on motion of plaintiff's attorneys an order was made setting aside the former order of dismissal and allowing said attorneys to prosecute the action for the purpose of determining the amount of and recovering their attorneys' fees, to which the defendant duly excepted. For such purpose and for that alone, the judgment in the case was obtained against defendants.

The plaintiff and his attorneys entered into a written agreement, which is set out in the record, in which it was stipulated that said attorneys were to receive as full compensation for their services, in said case, in the courts of Utah, one half of any amount that might be recovered, either by judgment or settlement; that no settlement was to be made without the consent of both parties to said

agreement, and that said attorneys should advance the
necessary costs and witness fees.   At the trial the defend-
ants' counsel requested the court, at the close of the tes-
timony and before the jury had been charged, to instruct
the jury that "said agreement is against public policy, and
void, and that there is no lien for attorneys' fees thereunder,
and your verdict should be for the defendant." The court
refused to so instruct the jury, and the defendant duly
excepted.   This action of the court is assigned as one of
the errors upon which defendant relies.

There are two stipulations in said agreement which are
against public policy.   1st.   The one which provides that
no settlement should be made without the consent of both
parties thereto; and 2d. The one by which the attorneys
agreed to advance the necessary court costs and witness
fees.

In regard to the first stipulation, in the case of *Board-
man & Brown* v. *Thompson*, 25 Iowa, 487, the contract
between the attorneys and the client stipulated that the
attorneys were to advance all the costs and have for their
services a certain per cent of the recovery, and no settle-
ment was to be made without the attorneys' consent, but
if the client did thus settle, the sum claimed in the peti-
tion, in a suit to be instituted, was agreed upon as the
amount of the recovery, and they were to have the per
cent on said sum, agreed upon for their fees.   In pursu-
ance of this agreement, a suit was instituted by the client,
Thompson, against the Chicago & Northwestern R. R.
Co., and settlement was made by Thompson, without the
consent of the attorneys.   The attorneys brought suit on
said contract against Thompson and the railroad com-
pany, to recover the fee stipulated for in said contract.
The supreme court of Iowa, on an appeal in said case,
held that the contract was void as against public policy.

In the case of *Key* v. *Vatter*, 1 Ohio, 132, the contract between the attorney and client provided for the payment of a contingent fee, and that no compromise should be made unless the attorneys joined in it, and the court held the contract was void as against public policy.

The same doctrine is also held in the following cases : *Lewis* v. *Lewis*, 15 Ohio, 715; *Weakly* v. *Hall*, 13 Ohio, 167; *Elwood* v. *Wilson*, 21 Iowa, 523; *North Ohio St. Ry Co.* v. *Ackley*, 49 N. E. Rep., 222.

I have been unable to discover any case or authority which announces a contrary doctrine.

The second stipulation, before quoted, renders the contract champertous and void.

Champerty is not only *malum prohibitum*, but is *malum in se* at common law, and renders void all contracts with which it is tainted. *Bacus* v. *Bryon*, 4 Mich., 535; *Thurston* v. *Percival*, 1 Pick., 415.

In the case of *Croco* v. *Oregon Short Line Ry. Co.*, decided by this court, and reported in 54 Pac. Rep., 985; 18 Utah, 321, it is held that "the common law was in force in this State at the adoption of the constitution, but that it is believed that its force as applied to champertous contracts was modified by the passage of Section 3683 of the compiled laws of 1888, which was in force at the date of the contract involved in the case." Said section was also in force at the date of the contract involved in the case at bar.

The contract in the former case provided that the attorneys should pay the advance costs of filing the suit, and the sheriff's fees for serving the same, and likewise pay the railroad fare of necessary witnesses from the State of Idaho in case of suit.

In the opinion rendered in the case, the court further held that, "Under said Section 3683, it was competent

for an attorney and client to agree upon the attorney's compensation; and such compensation may be made contingent upon success, and payable by percentage, or otherwise, out of the proceeds of the litigation, but it was not competent for the attorney, in consideration thereof, to agree to pay the advance fees and costs of the suit thereafter to be commenced.'' With this I heartily concur. The defendant's attorneys asked the trial court to instruct the jury to find for the defendant, because said contract was champertous, but the request was refused. This court sustained the lower court on the ground that other persons not parties to the suit should not be permitted to exonerate themselves from their just obligations because other parties had made a champertous contract regarding the suit, and that the defendant did not set up in its answer the plea of champertous contract.

The case at bar is distinguished from the case of *Croco* v. *Oregon Short Line Ry. Co.*

In that case there were no proceedings like in the present one to enforce the champertous contract. A judgment only was sought against the defendant for damages sustained by plaintiff. In the case before us the order setting aside the order of dismissal and judgment was not obtained at the instance of the plaintiff, or for his benefit, but was obtained solely at the instance of the attorneys, for the purpose of enforcing a contract which is champertous and against public policy, a contract which is *malum in se.*

In the affidavit in answer to that of the attorneys, made on the motion to set aside the order dismissing the case, the contract was set out as an exhibit, and it was therefore brought to the attention of the court in a proceeding, the only object of which was the enforcement of a contract both champertous and against public policy. The

attention of the court was again specifically called to the matter by the instructions asked for by the defendant. No court should in any way lend its aid to any proceeding to enforce such a contract.

The motion to set aside the order dismissing the case should have been denied, and this court should reverse the judgment and dismiss the case.

I do not wish to be understood as in any degree approving the methods resorted to in settling the case, for they were in my opinion, reprehensible; but that fact does not justify the enforcement of the contract.